UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------
ALEXANDER BIBICHEFF,

                       Plaintiff,                   **MEMORANDUM AND ORDER**
                                             **13-CV-1305 (DRH)(GRB)**

         -against-

ERIC H. HOLDER, JR., in his official
Capacity as U.S. Attorney General; JANET
ANN NAPOLITANO, in her official capacity
as Secretary of the U.S. Department of
Homeland Security; DAVID AGUILAR, in
his official capacity as Deputy Commissioner
of the U.S. Customs and Border Protection;
JOHN T. MORTON, in his official capacity as
Director of the U.S. Immigration and Customs
Enforcement; JOHN S. PISTOLE, in his
official capacity as Administrator for the
Transportation Security Administration,

                        Defendants.

-------------------------------------------------------X

**APPEARANCES:**


**For the Plaintiff:**
**BIBICHEFF & ASSOCIATES**
2568 86th Street, 2nd Fl.
Brooklyn, NY 11214
By:     Nicole Abruzzo Hemrick, Esq.


**For the Defendants:**
**UNITED STATES DEPARTMENT OF JUSTICE**
20 Massachusetts Ave., Nw
Washington, D.C. 20001
By:     Kristina Wolfe, Esq.
         Lily Sara Farel, Esq.


**UNITED STATES ATTORNEYS OFFICE, EDNY**
271 Cadman Plaza East
Brooklyn, NY 11201
By:     Margaret M. Kolbe, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Alexander V. Bibicheff commenced this action against U.S. Attorney General, Eric H. Holder, Secretary of the U.S. Department of Homeland Security, Janet Ann Napolitano, Deputy Commissioner of the U.S. Customs and Border Protection, David Aguilar, Director of the U.S. Immigration and Customs Enforcement, John Morton, and Administrator for the Transportation Security Administration, John S. Pistole alleging violations of the Administrative Procedures Act ("APA"), the Fourth and Fifth Amendments of the United States Constitution, and 42 U.S.C. § 1983. Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6). For the reasons set forth below, Defendants' motion is granted.

## *BACKGROUND*

These facts are taken from the Complaint and are assumed to be true for the purpose of this motion. Plaintiff is a United States citizen who travels internationally with his family for vacation an average of three times a year. On August 27, 2011, Plaintiff was traveling back to the United States after a one week vacation in Aruba. At the Customs and Border Protection ("CBP") preclearance area in the Aruba International airport, Plaintiff was handed a Form 6059B Declaration Form, and after having read a question about whether he was bringing any fruit with him, Plaintiff disclosed to a CBP officer that he had two apples and two bananas in his possession, which he had intended to eat on the airplane. Plaintiff asked if he could dispose of the fruit prior to passing through the inspection area, but the CBP officer told him that he would have to show the fruit to the officers at the next clearance area. At the next clearance area, Plaintiff handed the fruit to the CBP officer in charge. The officer confiscated the apples, but allowed Plaintiff to take the bananas with him. Plaintiff alleges that the officer "appeared to

make a notation on the computer." Plaintiff did not receive any citations or fines and ultimately boarded the airplane and flew back to the United States. After the trip, since Plaintiff's passport was set to expire in September of 2012, Plaintiff applied for a new U.S. passport, which the U.S. Department of State issued to him on May 20, 2012.

On August 3, 2012, Plaintiff returned to the United States after a vacation in Spain. Upon landing in JFK International Airport, a CBP officer at the primary inspection area asked Plaintiff if he ever lost his passport. Plaintiff responded that he never lost his old passport or his newly issued passport. The CBP officer then escorted Plaintiff to the secondary inspection area, where Plaintiff was detained for approximately 30-45 minutes. During the secondary inspection, the CBP officer asked Plaintiff whether he had any fruit with him, and Plaintiff answered that he did not. Plaintiff inquired as to why he was referred to secondary inspection, but he was not given an answer.

On September 29, 2012, Plaintiff and his wife returned to the United States after a vacation in Mexico, and Plaintiff was again referred to secondary inspection at JFK International Airport. Prior to being sent for secondary inspection a CBP officer tore up the Form 6059B that Plaintiff's wife had filled out and instructed Plaintiff to fill out a new one. Plaintiff and his wife were detained for approximately three hours, during which CBP officers questioned Plaintiff and searched his and his wife's luggage. Again, Plaintiff inquired as to why he had been referred to secondary inspection, but he was not given an answer.

On or about December 14, 2012, Plaintiff filed a complaint using the Department of Homeland Security Traveler Redress Inquiry Identity Program ("DHS TRIP") regarding his

recent experiences.[1]  Thereafter, on February 23, 2013, Plaintiff and his family returned to the

United States after a one week vacation in Mexico.  After questioning Plaintiff about his

occupation and how much cash his family had, a CBP officer brought Plaintiff and his family to

secondary inspection.  Plaintiff requested that he speak to a supervisor regarding his referral to

secondary inspection and informed the supervisor that he already made a complaint through

DHS TRIP and provided the supervisor with his Redress Control number.  The supervisor

informed Plaintiff that there was a 'hit' against him in the CBP computer system and that

Plaintiff would be stopped every single time he returned to the United States from abroad.

Plaintiff and his family were detained, interrogated, and searched for approximately two hours.

Plaintiff sets forth six causes of action in the Complaint.  Count I states that "[t]he

continuing failure of Defendants to complete their review of Plaintiff's DHS TRIP complaint and

to correct/update their system, and/or take other appropriate remedial action regarding Plaintiff's

DHS TRIP complaint is subject to correction by mandamus under 28 U.S.C. § 1361."[2]  Count II

alleges that "[t]he DHS policies violated Plaintiff's Fourth Amendment [rights] by permitting

DHS to refer Plaintiff to Secondary Inspection, which includes his detention, interrogation, and

search of his belongings without any reasonable suspicion."  Count III alleges that Defendants

violated the APA because Defendants "failed to complete their review of Plaintiff's DHS TRIP

complaint and to correct or update their system so the 'hit' against Plaintiff [was] removed."

---

[1] The DHS TRIP program was established pursuant to 49 U.S.C. § 44926 providing that "[t]he Secretary of Homeland Security shall establish a timely and fair process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat under the regimes utilized by the Transportation Security Administration, United States Customs and Border Protection, or any other office or component of the Department of Homeland Security."

[2] Although in the First Count, Plaintiff cites the Immigration and Nationality Act ("INA), he fails to provide any provision of that Act which he claims has been violated.

Count IV alleges that Defendants violated Plaintiff's due process rights by "failing to complete their review of Plaintiff's DHS TRIP complaint and to take appropriate remedial measures" and "failing to reveal the reason for the 'hit' against him." Finally, Count V asserts a claim under 42 U.S.C. § 1983 against Defendants for, *inter alia*, "subjecting Plaintiff to Secondary Inspection[s]."[3] Plaintiff now requests that the Court "[d]eclare Defendants' acts and omissions [as] illegal, arbitrary, capricious and [an] abuse of discretion," "[c]ompel U.S. agencies to reveal the derogatory information that is causing the 'hit' in the CBP computer system as Plaintiff enters the United States border," "[c]ompel U.S. agencies to complete their investigation of Plaintiff's DHS TRIP[] complaint," "[d]eclare the 'hit' in the CBP computer system, if caused by the fruit from [the] August 27, 2011 [incident] in Aruba, unlawful," "[d]eclare the CBP Officer's act of tearing up Plaintiff's Form 6059B and ordering Plaintiff to fill out a new Form 6059 on behalf of his family unit unlawful," "[e]njoin U.S. agencies from subjecting Plaintiff to Secondary Inspection," and "[e]njoin the CBP from ordering Plaintiff to fill out the Form 6059B on behalf of [his] family unit."

## DISCUSSION

**I.** **Defendants' Motion to Dismiss Claims Pursuant to Rule 12(b)(1)**

**A.** **Legal Standard**

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.' "

---

[3] Count VI solely seeks attorney's fees and costs.

*MacPherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 136 (E.D.N.Y. 2006) (quoting

*Reserve Solutions Inc. v. Vernaglia,* 438 F.Supp.2d 280, 286 (S.D.N.Y. 2006)), *aff'd,* 273 F.

App'x 61 (2008); *accord Tomaino v. United States,* 2010 WL 1005896, at *1 (E.D.N.Y. Mar.16,

2010). "On a Rule 12(b)(1) motion, the court may consider matters outside the pleadings,

including affidavits, documents, and testimony if necessary." *Tsanganea v. City Univ. of N.Y.,*

2008 WL 4054426, at *3 (S.D.N.Y. Aug.28, 2008) (citing *Kamen v. Am. Tel. & Tel. Co.,* 791

F.2d 1006, 1011 (2d Cir. 1986)), report and recommendation adopted, 2008 WL 4548857

(S.D.N.Y. Oct.8, 2008).

### B. Defendants' Mootness Argument

Defendants argue that "Plaintiff's claims regarding Defendants' alleged failure to

complete their review of his DHS TRIP inquiry are moot and should be dismissed" because

"[s]ince filing his Complaint . . . Plaintiff has received a response from DHS TRIP stating that

'DHS has researched and completed [its] review of [Plaintiff's] case.' " (Defs.' Mem. in Supp.

at 7-8.)

Article III, Section 2 of the United States Constitution limits the jurisdiction of federal

courts to "actual cases and controversies." *Jefferson v. Abrams,* 747 F.2d 94, 96 (2d Cir. 1984).

"When the issues presented are no longer live or the parties lack a legally cognizable interest in

the outcome, the case is moot." *Id.* (internal citations and quotation marks omitted). When a

defendant offers all that a plaintiff could hope to recover through litigation, "there is no

justification for taking the time of the court and defendant in the pursuit of minuscule individual

claims which defendant has ... satisfied." *Abrams v. Interco, Inc.,* 719 F.2d 23, 32 (2d Cir.

1983). In such a case, the plaintiff has no legally cognizable interest or personal stake. *Ambalu

v. Rosenblatt,* 194 F.R.D. 451, 452 (E.D.N.Y. 2000) (citing *Rand v. Monsanto Co.,* 926 F.2d 596,

598 (7th Cir. 1991) ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate ... and a plaintiff who refuses to acknowledge this loses outright under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake."). When a case lacks a legally cognizable interest, a justiciable case or controversy no longer exists and the case must be dismissed for lack of subject matter jurisdiction. *Fox v. Bd. of Trustees of the State Univ. of New York,* 42 F.3d 135, 140 (2d Cir. 1994), *cert. denied,* 515 U.S. 169 (1995); *Abrams,* 719 F.2d at 32. As set forth above, this Court is permitted to consider materials outside the four corners of the complaint on a motion to dismiss for lack of subject matter jurisdiction and may even resolve disputed jurisdictional facts by referring to evidence outside the pleadings. *See, e.g., Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000).

According to Defendants, approximately three months after filing this Complaint, Plaintiff received a response from the DHS regarding his TRIP complaint stating that "DHS ha[d] researched and completed [its] review of [Plaintiff's] case." (Defs.' Mem. in Supp. at 8.) "Shortly thereafter, DHS TRIP determined that the letter it sent to Plaintiff mistakenly contained information that did not apply to his complaint," and they sent Plaintiff an updated response dated April 30, 2013 (the "April 30 letter"), which also stated that DHS completed review of his case. (*Id*.) Further, the letter stated that DHS "made any corrections to records that [its] inquiries determined were necessary, including, as appropriate, notations that may assist in avoiding incidents of misidentification." (*Id*. at 9.)

Although Plaintiff received the letter subsequent to filing this action, the letter is currently within the Court's purview because Plaintiff submitted it on May 23, 2013 as an exhibit to a pre-motion letter. (Docket Entry 12.) Plaintiff now contends that "the Court may not rely on the letter to grant Defendants' motion to dismiss under FRCP 12(b)(1), but must allow

Plaintiff to undergo discovery." (Pl.'s Mem. in Opp'n at 12.) Specifically, he argues that his claim is not moot because the April 30 letter "does not confirm that the required corrective action was taken" and "fails to specify any steps Defendants have taken to ensure Plaintiff's constitutional rights to be free from unreasonable, non-routine, invasive and extensive search and seizure will not be violated again in the future." (*Id*. at 12-13.) However, as Defendants note, "[t]hat Plaintiff is dissatisfied with the information he received at the conclusion of that review does not resuscitate his moot claims to compel agency action." (Defs.' Reply at 6.) Ultimately, the letter demonstrates that Plaintiff has availed himself of a redress process mandated by Congress, and that process has been completed. *See* 49 U.S.C. § 44926. Furthermore, the Plaintiff has not demonstrated why he is "entitled to a declaratory judgment that Plaintiff's prior acts, omissions and delayed conclusion of the TRIP Inquiry were unlawful" (Pl.'s Mem. in Opp'n at 13) whereas it is clear that DHS completed its review approximately only four months after Plaintiff filed his complaint. Accordingly, Plaintiff's claims against Defendants for failing to complete their review of Plaintiff's DHS TRIP complaint are dismissed.[4]

## II.     Defendants' Motion to Dismiss Plaintiff's Claims Pursuant Rule 12(b)(6)

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6). First, in *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

---

[4] This includes Plaintiff's claims pursuant to Count I seeking a writ of mandamus compelling review of Plaintiff's DHS TRIP complaint, and Counts III, IV, and V alleging that the failure to complete a review of Plaintiff's DHS TRIP complaint violated the APA, Plaintiff's due process rights, and 42 U.S.C. § 1983, respectively.

prove no set of facts in support of his claim which would entitle him to relief." *See Twombly,* 550 U.S. at 561 (quoting *Conley,* 355 U.S. at 45–46) (internal quotation marks omitted). Instead, to survive a motion to dismiss under *Twombly,* a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court defined plausibility as follows: A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly,* 550 U.S. at 556–57) (internal citations omitted); *see also Ortiz v. City of New York,* 755 F.Supp.2d 399, 401 (E.D.N.Y.2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement to relief.") (internal quotation marks omitted).

Generally, in deciding a motion to dismiss pursuant to Rule 12(b)(6), the court may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007); *see also Gillingham v. Geico Direct,* 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008).

## A.    Plaintiff's Fourth Amendment Claims

Plaintiff alleges that his Fourth Amendment rights were violated when he was stopped three times for secondary inspection at JFK international airport.  One stop lasted for 30-45 minutes, one stop lasted for three hours and one stop lasted for two hours.  Plaintiff alleges that CBP officers interrogated him, detained him and searched his luggage.  In addition, Plaintiff alleges that a CBP officer revealed to him that there was a "hit" against him in the CBP system and that Plaintiff would be stopped every time he returned to the United States from abroad. Finally, Plaintiff alleges that a CBP officer tore up his wife's 6059B Form and ordered Plaintiff to fill out and sign a new one.  It is Plaintiff's position that all of this activity, taken cumulatively, constitutes a "non-routine" border search, which requires reasonable suspicion under the Fourth Amendment.

The Fourth Amendment requires the government to respect "[t]he right of the people to be secure in their persons … and effects, against unreasonable searches and seizures."  U.S.

Const. Amend. IV. "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). Searches and seizures which occur at the international border are "qualitatively different" than searches and seizures which occur domestically. *Id* at 538. The Supreme Court has stated that "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by the virtue of the fact that they occur at the border." *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004) (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)). Moreover, "routine" border searches "are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538.

In *Tabbaa v. Chertoff*, the Second Circuit noted that "the precise line between what is routine and what is not routine … has not been clearly delineated." 509 F.3d 89, 98 (2d Cir. 2007). However, the decisive factor in analyzing whether a search is "routine" is not overall inconvenience, but rather, "the level of intrusion into a person's privacy." *Id*. (quoting *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006)). For example, searches of "outer clothing, luggage, a purse, wallet, pockets or shoes … do not substantially infringe on a traveler's privacy rights." *Id*. On the other hand, "more invasive searches, like strip searches, require reasonable suspicion." *Id*. (internal citations and quotation marks omitted); s*ee Montoya de Hernandez*, 473 U.S. at 541 n.4 (finding that "strip, body cavity, or involuntary x-ray searches" are "non-routine").

Plaintiff's allegations do not support a claim that the searches he experienced were non-routine. In particular, Plaintiff's allegation that officers searched his luggage does not support a

claim that he experienced a non-routine search.  *See Tabbaa* 509 F.3d 98; s*ee also United States v. Singh*, 2012 WL 2501032 (E.D.N.Y. June 27, 2012) (holding that authorities' search of defendant's suitcase in JFK upon entering the United States from abroad is plainly a routine border search).  Furthermore, Plaintiff's reliance on *Montoya de Hernandez* is misplaced.  473 U.S. 541.  In that case, a woman was detained for a 16-hour period because customs agents believed that she was smuggling narcotics via her "alimentary canal" and ultimately was ordered to partake in a rectal exam.  *Id*.  The Court held that in such an instance "particular suspicion" is required, and noted that "[t]he interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusion [beyond the body's surface] on the mere chance that desired evidence might be obtained."  *Id*. at 540 n. 3.  Here, however, Plaintiff has not alleged that his person was intrusively searched or examined.  Moreover, any comparison between an intrusive body search and the tearing up of a customs form is untenable.

Furthermore, the length of Plaintiff's detentions do not render the searches non-routine.  Even taken cumulatively, the total time Plaintiff was detained, nearly six hours over three secondary inspections, cannot be viewed as "non-routine."  The Supreme Court has "consistently rejected hard-and-fast time limits" on border searches.  *Montoya de Hernandez*, 473 U.S. at 543.  Instead, the Court has declared that "[c]ommon sense and ordinary human experience must govern over rigid criteria."  *United States v. Sharpe*, 470 U.S. 675, 685 (1985).  In *Tabbaa*, the Second Circuit rejected plaintiffs' argument that the duration of their detentions, which lasted between four and six hours, were "non-routine."  509 F.3d at 100.  In doing so, the Second Circuit relied on *Flores-Montano,* noting that "the Fourth Amendment [does not] shield[] entrants from inconvenience or delay at the international border."  *Id*.  Moreover, "delays of one to two hours at international borders are to be expected."  *Id*. (quoting *Flores-Montano* 541 U.S.

at 155).  Although Plaintiff's experiences may have resulted in inconvenience, they do not reach

the level of non-routine for the purposes of a Fourth Amendment claim.  Accordingly, Plaintiff's

Fourth Amendment claim is dismissed.

**B.     Fifth Amendment Due Process Claim**

"To establish entitlement to due process protection under the Fifth Amendment,

[Plaintiff] must first demonstrate [that he] possess[es] a property interest of constitutional

dimension." *Furlong v. Shalala,* 156 F.3d 384, 393 (2d Cir. 1998).  It is only when such a right

is established that the Court may turn to a discussion of whether there has been a deprivation of

that right without due process.  *See Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 571–72

(1972).  "In almost all cases, the existence of a federally protectable property right is an issue of

law for the court." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir. 1999).  As the

Second Circuit has noted, "[i]f a protected interest is identified, a court must then consider

whether the government deprived the plaintiff of that interest without due process." *Narumanchi*

*v. Board of Trustees*, 850 F.2d 70, 72 (2d Cir. 1988).

"Although the Constitution protects property interests, it does not create them." *Furlong*,

156 F.3d at 393.  Protected property interests "are created and their dimensions are defined by

existing rules or understandings that stem from an independent source such as state law-rules or

understandings that secure certain benefits and that support claims of entitlement to those

benefits." *Roth,* 408 U.S. at 577.  "[A]n abstract need or desire for benefits is not enough to

establish a property interest." *Hotel Syracuse, Inc. v. Young,* 805 F. Supp. 1073, 1083 (N.D.N.Y.

1992).  There must be "a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577.

Here, Plaintiff asserts that he has a "private interest in his travel in and out of the United

States, possession and control over his property, knowledge regarding information about him in

government databases, and ability to dispute and correct erroneous information about him within government databases."[5]  (Pl.'s Mem. in Opp'n at 18.)  Plaintiff, however, has not provided any authority demonstrating that any of these alleged rights are protected by the Fifth Amendment. Assuming, however, for purposes of this motion that Plaintiff sufficiently alleged that some protected interest was violated, the Complaint does not adequately plead that sufficient process was not provided.  The Supreme Court has delineated three factors to consider in determining whether due process was adequately provided:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

In this circumstance, whatever weight might be given to Plaintiff's articulated private interests or any risk of procedural error during the DHS TRIP review process is significantly outweighed by the government's substantial interest in protecting its borders and ensuring national security.  It is clear that "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border."  *Flores-Montano*, 541 U.S. at 152; *see also Haig v. Agee*, 453 U.S. 280, 307 (1981) ("[N]o governmental interest is more compelling than the security of the Nation.").  With regard to Plaintiff's asserted interest in international travel, the Supreme Court has stated that "the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States," for "[u]nlike the

---

[5] The Court has already determined that Plaintiff's claim regarding his "ability to dispute and correct erroneous information about him within government databases" is moot because review of his DHS TRIP complaint has been completed.

right of interstate travel, which is 'virtually unqualified,' freedom to travel internationally is far from absolute, and has been described as 'no more than an aspect of the liberty protected by the Due Process Clause.' " *Karpova v. Snow*, 402 F. Supp. 2d 459, 472 (S.D.N.Y. 2005) (citing *Haig*, 453 U.S. at 306-07), *aff'd* 497 F.3d 262 (2d Cir. 2007). Furthermore, "[t]he freedom to travel abroad, without more, does not overcome the presumptive constitutionality of travel restrictions based on foreign policy and/or national security justifications." *Karpova v. Snow*, 402 F. Supp. 2d 459, 472 (S.D.N.Y. 2005) (citing *Zemel v. Rusk*, 381 U.S. 1, 16 (1965); *Regan v. Wald*, 468 U.S. 222, 242 (1984)).

Moreover, with respect to plaintiff's asserted interest in his property, although the CBP officers may have temporarily dispossessed Plaintiff of his luggage, consistent with the government's interest in national security, the CBP has authority to conduct such searches. *See* 19 C.F.R. § 162.6 (stating that "[a]ll persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection and search by a Customs officer"). Furthermore, regarding Plaintiff's assertion that he is entitled to knowledge about his existence in government databases, the government has articulated that it "does not reveal whether a particular person is on or not on a watchlist" based on its assessment that revealing such information has the possibility to harm national security and law enforcement interest. *See* http://www.dhs.gov/step-1-should-i-use-dhs-trip. Therefore, given the government's strong interest in protecting national security at its borders, Plaintiff's due process claim is dismissed.

**C.      § 1983 Claims**

Plaintiff alleges that Defendants' subjection of him to secondary inspection violated his rights pursuant to 42 U.S.C. § 1983, which states in relevant part: "[e]very person who, under

color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . .

subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any

rights … shall be liable to the party injured."  It is well established that § 1983 is of limited scope

as it "does not reach purely private conduct and … [the] actions of the Federal Government and

its officers are at least facially exempt from its proscriptions."  *D.C. v. Carter*, 409 U.S. 418,

424-425 (1973).  Given that Plaintiff initiated this lawsuit against Defendants solely in their

official federal capacities as Attorney General of the United States, Secretary of the DHS,

Deputy Commissioner of the CBP, Director of ICE, and Administrator for the TSA, it appears

that these federal officials are exempt from the liability that § 1983 seeks to impose.

Although Plaintiff concedes that § 1983 applies to persons acting under color of State

law, he contends that it may apply to federal officers if there is "proof of joint action with state

officials."[6]  (Pl.'s Mem in Opp'n at 20.)  In support of his position that joint action occurred

here, Plaintiff points to the government's April 30 letter which states that DHS TRIP complaints

most often arise because a traveler's personal information may be similar to that of other persons

in systems which contain information from Federal, state, local and foreign sources.  (*Id.*)

Plaintiff seizes upon the government's use of the words "state" and "local" and asks the Court to

compel discovery regarding the source of the information in the government's databases.  As

noted above, however, on a motion to dismiss pursuant to 12(b)(6), the Court may only consider

facts stated in the complaint and documents attached to the complaint or incorporated in it by

---

[6] Plaintiff relies on *Peck v. United States*, 470 F. Supp. 1003, 1007 (S.D.N.Y. 1979), to
support his position.  In *Peck*, the Court stated that "federal officers may be the subject of a
[Section] 1983 suit if there is proof of a joint conspiracy with state officials."  *Id.*

reference.[7]  Here, Plaintiff certainly could not have attached the April 30 letter to his Complaint filed in December of 2014.  Moreover, nothing in the Complaint supports a claim that defendants acted jointly with state officials.  As a result, Plaintiff's § 1983 claims are dismissed.

## *CONCLUSION*

For the foregoing reasons, Defendants' motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) is granted.

**SO ORDERED.**

Dated: Central Islip, New York
      September 23, 2014

                            _____/s/_____
                            Denis R. Hurley
                            United States District Judge

---

[7] The Court, presented with extraneous materials from Plaintiff could convert the motion to dismiss into a motion for summary judgment.  *See Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir. 1991), *aff'd* 952 F.2d 394 (2d Cir. 1991) ( "Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.") (internal citation and quotation marks omitted); *Abbey v. 3F Therapeutics Inc.,* 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009) (noting that a district court enjoys "complete discretion" over the decision to convert a Rule 12(b)(6) motion into a motion for summary judgment) (internal citation and quotation marks omitted). The Court in its discretion declines to convert the motion here into one for summary judgment.